UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| LAURA DUTTON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 2:13-CV-180 |
| | § | |
| JAYSON FRY, former City of Estelline | § | |
| police officer, in his individual and official | § | |
| capacities; CHRIS JOLLY, City of | § | |
| Memphis police chief, in his individual | § | |
| and official capacities; and CITY OF | § | |
| ESTELLINE, TEXAS | § | |
| | § | |
| Defendants | § | |

## DEFENDANT CHRIS JOLLY, CITY OF MEMPHIS POLICE CHIEF'S, IN HIS INDIVIDUAL CAPACITY, BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

SPROUSE SHRADER SMITH, PLLC
Lee Ann Reno, Texas SBN 00791509
Leeann.reno@sprouselaw.com
Alex Yarbrough, Texas SBN 24079615
Alex.yarbrough@sprouselaw.com
701 S. Taylor, Suite 500
Post Office Box 15008
Amarillo, Texas 79105-5008
Telephone: (806) 468-3300
Facsimile: (806) 373-3454

**ATTORNEYS FOR DEFENDANT
CHRIS JOLLY IN HIS INDIVIDUAL CAPACITY**

**CHRIS JOLLY'S, INDIVIDUALLY,**
**BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

TO THE HONORABLE COURT:

Defendant Chris Jolly, in his individual capacity, asserts his entitlement to qualified and official immunity and moves for summary judgment in this civil rights case on all of Plaintiff's claims against him as follows:

## INTRODUCTION

In Plaintiff's Original Complaint, Plaintiff brings federal claims and state law claims against City of Memphis Chief of Police Chris Jolly in his individual capacity.[1] The federal law claims are:

1.  Unlawful Detention (*Pl.'s Orig. Compl. ¶8*);

2.  Unlawful Search (*Pl.'s Orig. Compl. ¶ 2*);

3.  Unlawful Arrest (*Pl.'s Orig. Compl. ¶ 2*);

4.  Unlawful Seizure of Plaintiff's property (*Pl.'s Orig. Compl. ¶2*);

5.  Negligent Hiring, Training, and/or Supervision (*Pl.'s Orig. Compl. ¶8, 29–33*)[2];

Plaintiff's Original Complaint alludes to state law claims; therefore, out of an abundance of caution, Defendant Jolly will address false imprisonment/arrest, money had and received and negligence in hiring, training and supervising.  (*Pl.'s Orig. Compl. ¶ 3, 22, 34*).

## CHIEF JOLLY IS ENTITLED TO QUALIFIED IMMUNITY because he did not violate Plaintiff Dutton's constitutional rights

At the time of the incident complained of by Plaintiff, Chief Chris Jolly was a law enforcement officer with the City of Memphis.  Chief Jolly completed all training mandates for

---

[1] Plaintiff's Original Complaint vaguely alleges claims against Defendants and does not specify which claims are brought against each Defendant; thus, out of an abundance of caution, Defendant Jolly's brief will address Fourth Amendment and state law claims.

[2] Because Plaintiff's claim for negligent hiring, training, and/or supervision is addressed beneath the "Municipal Liability" heading, Defendant Jolly addresses this claim as it may relate to Chief Jolly and the City of Memphis.

the New Chief's course on June 17, 2011 and has served as Chief of Police since that date. *(APP ___, [Def. Jolly Mtn. for Summary Judgment, p. 5]).*

As a law enforcement officer, Chief Jolly is entitled to the defense of qualified immunity, which is an affirmative defense to all federal law claims. *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982). Under the doctrine of qualified immunity, government officials are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Id.* at 818.   Qualified immunity is a threshold legal question to be decided by the court. *Mitchell v. Forsyth*, 472 U.S. 511, 527–29 (1985).   The government official's liability turns on the "objective legal reasonableness" of the action assessed in light of the legal rules that were "clearly established" at the time it was taken. *Anderson v. Creighton*, 483 U.S. 635, 639 (1987).

Even though a state official may have erred, he is still entitled to qualified immunity if it can be shown that his actions were reasonable, albeit mistaken.   *Lampkin v. City of Nacogdoches*, 7 F.3d 430, 435 (5th Cir. 1993).   Qualified immunity "gives ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law."   *Malley v. Briggs*, 475 U.S. 335, 343 (1986). "That is the balance the courts have struck between compensating wronged individuals for deprivation of constitutional rights and frustrating officials in discharging their duties for fear of personal liability." *Brown v. Lyford*, 243 F.3d 185, 190 (5th Cir. 2001). Conduct which is merely negligent cannot meet the standard for liability under § 1983. *Daniels v. Williams*, 474 U.S. 326, 331–34 (1986); *Davidson v. Cannon*, 474 U.S. 344, 347 (1986).   In the context of a Fourth Amendment, as is the case here, the Constitution does not prohibit all seizures, only those which are unreasonable. *Terry v. Ohio*, 392 U.S. 1, 9 (1968).

In determining the applicability of qualified immunity, a two-step analysis is employed. The court must first consider whether the asserted constitutional injury involves a right clearly established at the time of the event. *Hare v. City of Corinth, MS.*, 22 F.3d 612, 614 (5th Cir. 1994). The second step for the court to consider is whether the official's actions were objectively reasonable. *Anderson*, 483 U.S. at 639. Objective reasonableness is assessed in light of legal rules clearly established at the time of the incident. *Id.* "If reasonable public officials could differ on the lawfulness of the defendant's actions, the defendant is entitled to qualified immunity." *Pfannstiel v. City of Marion*, 918 F.2d 1178 (5th Cir. 1990). "The party seeking damages from an official asserting qualified immunity bears the burden of overcoming that defense." *Bennett v. City of Grand Prairie, Texas*, 883 F.2d 400, 408 (5th Cir. 1989).

<u>Where summary judgment is requested based on the defense of qualified immunity, the moving party is not required to put forth evidence to meet its summary judgment burden for a claim of immunity.</u> *Beck v. Tex. State Bd. of Dental Exam'rs*, 204 F.3d 629, 633 (5th Cir. 2000). "It is sufficient that the movant in good faith pleads that it is entitled to absolute or qualified immunity." *Id.* "Although nominally an affirmative defense, the plaintiff has the burden to negate the assertion of qualified immunity once properly raised." *Collier v. Montgomery*, 569 F.3d 214, 217–18 (5th Cir. 2009); *see also Burns-Toole v. Byrne*, 11 F.3d 1270, 1274 (5th Cir. 1994); *Thompson v. Upshur*, 245 F.3d 447, 456 (5th Cir. 2001).

A person may sue for an award of money damages against anyone who "under color" of any State law or custom violates rights under the Constitution of the United States. 42 U.S.C. § 1983. In order to succeed on a claim, the plaintiff must prove beyond a preponderance of the evidence that: (1) the defendant intentionally committed acts that violated one or more of the plaintiff's Federal constitutional rights; (2) the defendant acted "under color" of the authority of

the State of Texas; and (3) the defendant's acts were the legal cause of the plaintiff's damages. Based on the above standard, Chief Jolly retains his qualified immunity for Plaintiff's claims, as is demonstrated below.

## A. Chief Jolly is Entitled to Qualified Immunity from Plaintiff's Unlawful Detention Claim

There is no evidence Chief Jolly made any decision or offered an opinion to Officer Fry regarding whether Plaintiff Dutton should be detained on November 28, 2012. *(APP ___, [Def. Jolly Dep. p. 25, lns. 16–19]).* Chief Jolly was merely an assisting an officer with his K-9 and did not initially stop Plaintiff for speeding. *(APP ___, [Pltf. Dutton Dep. p. 60, ln. 24–p.61, ln. 5 (Plaintiff admits Officer Fry stopped her and Chief Jolly arrived after Officer Fry contacted dispatch for a K-9 officer)]; App ___, [Def. Fry Dep. p. 41, lns. 3–4]*; APP ___, *[Def. Jolly Dep. p. 47, lns. 13–15]).* Chief Jolly arrived on the scene to assist Officer Fry, and while he interviewed Plaintiff in his vehicle because there was an in-car camera recording device, Defendant Jolly did not make the decision on the scene to detain Plaintiff Dutton. *(APP ___, [Pltf. Dutton Dep. p. 96, lns. 4–24, p. 98, lns. 6–11]; (APP__ , [Def. Expt. Rodriguez Aff. ¶62]; (APP__ , [Def. Expt. Rodriguez Aff. ¶49]).*

Notwithstanding that Defendant Jolly did not detain Plaintiff because it was not his traffic stop, Officer Fry had reasonable suspicion to detain Plaintiff after smelling the odor of marijuana and further when the K-9 officer made a positive alert for illegal substances.

When Officer Fry first made contact with Plaintiff, he smelled an odor he believed to be marijuana coming from the vehicle. *(APP ___, [Def. Fry Dep. p. 41,lns. 16–18])).* Officer Fry reasonably believed that something illicit was going on based on the smell of marijuana coming from the vehicle. *(APP ___, Def. Fry Dep. p. 44, lns. 7–19]).* Defendants' law enforcement expert confirmed the odor of marijuana is sufficient to establish reasonable suspicion that crime

may be afoot.  *(APP__ , [Def. Expt. Rodriguez Aff. ¶40, 56]).*  "When the purposes of the stop are resolved and the officer's initial suspicions have been verified or dispelled, the detention must end unless there is additional reasonable suspicion supported by articulable facts." *U.S. v. Grant*, 349 F.3d 192, 197 (5th Cir. 2003). "Reasonable suspicion exists when the detaining officer "can 'point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the search and seizure]." *Id*. at 195. "When making a reasonable-suspicion determination . . . [courts] must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." *Id*. at 197.

The odor of marijuana coming from a vehicle represents the kind of "specific and articulable facts" giving rise to a "particularized and objective basis" for suspecting legal wrongdoing, given that possession and delivery of marijuana is a crime under sections 481.120 and 481.121 of the Texas Health and Safety Code.  As such, Officer Fry's testimony that he smelled marijuana from the initial contact with Plaintiff when he stopped her provides adequate reasonable suspicion to justify a continued detention.  *(APP ___, Def. Fry Dep. p. 44, lns. 7–19]; APP__ , [Def. Expt. Rodriguez Aff. ¶40, 56]).*  Therefore, Officer Fry's detention of Plaintiff to investigate the origin of the odor of marijuana was not in violation of her Fourth Amendment right to be free from unlawful detainment.

Plaintiff was lawfully detained after the K-9 officer made a positive alert for illegal substances in Plaintiff's vehicle. A detention following a positive alert by a drug-detecting dog, is lawful for the purpose of investigating and is supported by probable cause for a search of the vehicle.  *U.S.* v. *Sanchez-Pena*, 336 F.3d 431, 444 (5th Cir. 2003); *U.S. v. Williams*, 69 F.3d 27, 28 (5th Cir. 1995); *U.S. v. Dovali-Avila*, 895 F.2d 206, 207 (5th Cir. 1990).   Here, Chief Jolly

arrived on the scene with K-9 officer, Kilo, and conducted a free air sniff of Plaintiff's vehicle. *(APP ___, [Pltf. Dutton Dep. p. 84, lns. 13–20]); APP ___, [Def. Jolly Dep. p. 25, lns. 5–7, p. 47, ln. 24–p.48, ln. 5]).*   The K-9 officer, Kilo, alerted to a spot on Plaintiff's vehicle by sitting, as Kilo is a passive alert dog.   *(APP ___, [Def. Jolly Dep. p. 48, ln. 24–p. 49, ln. 3]; APP ___, [Def. Fry Dep. p. 64, lns. 23–p. 65, ln. 1]).*   Thus, the detention following the positive alert for illegal substances in Plaintiff's vehicle was lawful, and Chief Jolly is entitled to summary judgment on Plaintiff's claim of unlawful detention.

## B.  Chief Jolly is Entitled to Qualified Immunity from Plaintiff's Unlawful Search Claim

There is no evidence Chief Jolly's qualified immunity has been waived on Plaintiff's claim for an unlawful search.   An officer's qualified immunity remains intact so long as probable cause for the search exists.   *Hart*, 127 F.3d at 444.   Even law enforcement officers who "'reasonably but mistakenly conclude that probable cause is present' are entitled to immunity." *Hunter*, 502 U.S. at 227.

The Fifth Circuit "has consistently held that the smell of marijuana alone may constitute probable cause to search a vehicle." *U.S. v. Ibarra-Sanchez*, 199 F.3d 753, 760 (5th Cir. 1999).[3] Here, Plaintiff's vehicle was searched only after Officer Fry determined there was probable cause to search.   On initial contact with Plaintiff, Officer Fry testified that he smelled marijuana coming from Plaintiff's vehicle.   *(APP ___, [Def. Fry Dep. p. 44, lns. 20–23]).*   At that time, Officer Fry reasonably believed he had probable cause to search Ms. Dutton's vehicle.   *(APP ___, [Def. Fry Dep. p. 45, lns. 14–17]; (APP__, [Def. Expt. Rodriguez Aff. ¶14, 57]).*

---

[3] *See, e.g., U.S. v. McSween*, 53 F.3d 684, 686–87 (5th Cir. 1995); *U.S. v. Reed*, 882 F.2d 147, 149 (5th Cir.1989) (observing that the smell of marijuana "in itself would have justified the subsequent search of Reed's vehicle"); *United States v. Henke*, 775 F.2d 641, 645 (5th Cir.1985) ("Once the officer smelled the marijuana, he had probable cause to search the vehicle."); *United States v. Villarreal*, 565 F.2d 932, 937 (5th Cir.1978) ("The odor of marijuana detected by [the officer] as emanating from the car furnished him with probable cause to search the trunk.").

Moreover, a positive alert by a drug-detecting dog creates probable cause for a search of the vehicle.  *U.S.* v. *Sanchez-Pena,* 336 F.3d 431, 444 (5th Cir. 2003); *U.S. v. Williams,* 69 F.3d 27, 28 (5th Cir. 1995); *U.S. v. Dovali-Avila,* 895 F.2d 206, 207 (5th Cir.1990).  In the case of a vehicle search,"[t]he scope of a warrantless search of an automobile . . . is defined by the object of the search and the places in which there is probable cause to believe that it may be found.  *Id.* at 140.  (quoting *U.S. v. Ross*, 456 U.S. 798, 824 (1982)). "If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *Ross*, 456 U.S. at 825.

On November 28, 2012, Officer Fry, out of an abundance of caution, contacted dispatch for a K-9 officer. *(APP ___, [Pltf. Dutton Dep. p. 81, lns. 4–9]; APP ___, [Def. Fry Dep. p. 58, lns. 14–17])* When Chief Jolly conducted the free air sniff with his K-9, Kilo made a positive alert on Plaintiff's vehicle. *(APP ___, [Def. Jolly Dep. p. 48, ln. 24–p. 49, ln. 3]; APP ___, [Def. Fry Dep. p. 64, lns. 23–p. 65, ln. 1]).*

As noted above, probable cause to search a vehicle is established based on the smell of marijuana alone, and probable cause is also established by a positive alert to drugs from a drug-detecting dog. *Ibarra-Sanchez*, 199 F.3d at 760; *Sanchez-Pena*, 336 F.3d at 444; *Williams*, 69 F.3d at 28; *Dovali-Avila*, 895 F.2d at 207.  The evidence conclusively shows that Officer Fry believed he smelled marijuana and the drug-detecting dog made a positive alert for illegal substances on Plaintiff's vehicle; therefore, Defendant Jolly has established that probable cause existed to search the vehicle as a matter of law.

Probable cause to search a vehicle includes probable cause to search containers and compartments inside the vehicle that could reasonably conceal the object of the search. *See U.S.*

*v. Ross*, 456 U.S. 798, 821–24 (1982) .[4]  Clearly, in searching for evidence of marijuana, Officer

Fry had probable cause to examine the bag sitting in Plaintiff's vehicle wherein Plaintiff

Dutton's money was found.  This is because the bag could have reasonably contained drugs or

drug related contraband. *California v. Acevedo*, 500 U.S. 565, 580 (1991) (holding "[t]he police

may search an automobile and the containers within it where they have probable cause to believe

contraband or evidence is contained).

Accordingly, because the Defendant Officers had probable cause to search the vehicle

and the containers therein for drugs, the warrantless search of the vehicle and the containers

therein was not unlawful under the Fourth Amendment.  Plaintiff has failed to raise a genuine

issue of material fact concerning the search of her vehicle; therefore, Defendant Jolly is entitled

to summary judgment with respect to the search.

## C. Chief Jolly is Entitled to Qualified Immunity from Plaintiff's Unlawful Arrest Claim

Section 1983 "is not itself a source of substantive rights," but merely provides "a method

for vindicating federal rights elsewhere conferred." *Baker v. McCollan*, 443 U.S. 137, 145 n.3

(1979). Therefore, before a plaintiff can support a valid cause of action under § 1983, he must

identify constitutionally protected conduct a defendant has infringed. *County of Sacramento v.*

*Lewis*, 523 U.S. 833, 842 n.5 (1998). Whether an arrest was constitutional turns on whether the

arresting officer lacked probable cause.  *Vela v. White*, 703 F.2d 1257 (5th Cir. 1983); *Trejo v.*

*Perez*, 693 F.2d 482 (5th Cir. 1982).   Importantly, the reasonableness of Defendant Jolly's

actions must be evaluated from the objective perspective of a *reasonable police officer on the*

---

[4] "When a legitimate search is under way, and when its purpose and its limits have been precisely defined, nice distinctions between closets, drawers, and containers, in the case of a home, or between glove compartments, upholstered seats, trunks, and wrapped packages, in the case of a vehicle, must give way to the interest in the prompt and efficient completion of the task at hand." *Ross*, 456 U.S. at 821.   "The scope of a warrantless search of an automobile thus is not defined by the nature of the container in which the contraband is secreted.  Rather, it is defined by the object of the search and the places in which there is probable cause to believe that it may be found." *Id*. at 824.

scene—not the subjective beliefs of Plaintiff or her attorney. *See Linbrugger v. Abercia*, 363 F.3d 537, 542–43 (5th Cir. 2004); *Stroik v. Ponseti*, 35 F.3d 155, 158 (5th Cir. 1994).

In the context of a Fourth Amendment false arrest claim, "[a]n officer's conduct is objectively reasonable 'if a reasonable person in their position could have believed he had probable cause to arrest.'" *Deville v. Marcantel*, 567 F.3d 156, 166 (5th Cir. 2009) (citing *Goodson v. City of Corpus Christi*, 202 F.3d 730, 740 (5th Cir. 2000)).   Moreover, the Fifth Circuit's threshold for a finding of probable cause is quite low, as established in *United States v. Wadley*, 59 F.3d 510 (5th Cir. 1995).   In *Wadley*, the Fifth Circuit held that probable cause existed to arrest a suspect who merely had fled from police in a high crime area and while doing so he "reached into his pocket." *Id*.

An officer's training and prior law enforcement experience is relevant in determining whether he had probable cause to arrest. *Id.* at 513.  Here, Officer Fry was the arresting officer of Plaintiff.  As Chief Jolly merely responded to another officer's request for assistance; Plaintiff correctly admits Chief Jolly did not arrest her.  Officer Fry, the arresting officer, had thirteen years of law enforcement experience and had been involved in conducting traffic stops, participating in investigations, detaining suspects and arresting individuals for many years. Also, Defendants' law enforcement expert, Commander Albert Rodriguez, agreed that Officer Fry had probable cause, under the facts, to arrest Plaintiff Dutton; and at the very least, that a reasonable and prudent officer under the same or similar circumstances could have believed he had probable cause to arrest Laura Dutton on November 28, 2012.

Probable cause to arrest a criminal defendant for any offense is a bar to an unlawful arrest and imprisonment claim. *See Pfannstiel v. City of Marion*, 918 F.2d 1178, 1183 (5th Cir. 1990). The probable cause inquiry is an objective one. The issue is why an officer believes probable

cause exists and whether, based on the information the officer possesses, a reasonable person could come to the same objective conclusion. *Ohio v. Robinette*, 519 U.S. 33, 38–39 (1996). The subjective beliefs and motivations of the seizing officer are irrelevant to this determination. "So long as police do no more than they are objectively authorized and legally permitted to do, their motives in doing so are irrelevant and hence not subject to inquiry." *United States v. Causey*, 834 F.2d 1179, 1184 (5th Cir. 1987).

"Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law." *Baker*, 443 U.S. at 146. Therefore, there is no federally based cause of action for an alleged unlawful search, arrest, or seizure, unless a law enforcement officer lacked probable cause.  This is because 42 U.S.C. § 1983 is a federally created cause of action to redress civil rights violations. *Fields v. City of S. Houston*, 922 F.2d 1183, 1189 (5th Cir. 1989); *Price v. Roark*, 256 F.3d 364, 369 (5th Cir. 2001). Therefore, to trigger Constitutional protections, a plaintiff bears the burden of alleging facts which show that an arresting officer lacked probable cause for the arrest. *Brown v. Lyford*, 243 F.3d 185, 189 (5th Cir. 2001); *Sorrenson v. Ferrie*, 134 F.3d 325, 330 (5th Cir. 1998). Thus, probable cause to arrest a criminal defendant for any offense is a bar to an unlawful arrest claim. *See Pfannstiel v. City of Marion*, 918 F.2d 1178, 1183 (5th Cir. 1990); *Fields*, 922 F.2d at 1189.  Here, there is no evidence Plaintiff was arrested, searched, or subject to a seizure by Defendant Jolly. Nor is there evidence that she was arrested, searched or subjected to a seizure without probable cause.

Even when a court determines that probable cause did not, in fact, exist, qualified immunity still protects an officer if the officer's mistaken *belief* that probable cause existed was reasonable.  *See Anderson*, 483 U.S. at 644.  In this regard, when deciding whether an officer's conduct with regard to a Fourth Amendment right was objectively reasonable for qualified

immunity purposes, "there must not even 'arguably' be probable cause for the search and arrest for immunity to be lost." *Hart v. O'Brien*, 127 F.3d 424, 444 (5th Cir. 1997).  Law enforcement officers who "'reasonably but mistakenly conclude that probable cause is present' are entitled to immunity."  *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).  Qualified immunity will not be available only "where it is obvious that a reasonably competent officer would find no probable cause. On the other hand 'if officers of reasonable competence could disagree on the issue, immunity should be recognized.'" *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994).

Significantly, Chief Jolly is entitled to rely on evidence and information provided to him by other law enforcement officers, even if the evidence turns out to be false or incorrect. "[W]here a police officer makes an arrest on the basis of oral statements by fellow officers, an officer will be entitled to qualified immunity from liability in a civil rights suit for unlawful arrest provided it was objectively reasonable for him to believe, on the basis of the statements, that probable cause for the arrest existed." *Deville v. Marcantel*, 567 F.3d 156, 166 (5th Cir. 2009) (*quoting Rogers v. Powell*, 120 F.3d 446, 455 (3d Cir. 1997); *Morris v. Dillard Dep't Stores Inc.*, 277 F.3d 743, 754 (5th Cir. 2001) (The court noted the extension of qualified immunity to other officers; "It is established law within this circuit and others that an officer not present at the time of an alleged crime may form probable cause sufficient to entitle that officer to qualified immunity where the officer interviews an eyewitness to the alleged crime.").  In using the reasoning in *Deville*, this court can conclude that an officer could reasonably believe Plaintiff was speeding and that Officer Fry detected the odor of marijuana coming from her vehicle "because [Chief Jolly] had an account of criminal activity from a seemingly reliable witnessing officer" (*i.e.* Officer Fry).  See 567 F.3d at 167.

Plaintiff complains in part that the information relied on by Chief Jolly was incorrect. However, Defendant Jolly is entitled to rely on information and evidence provided to him by Officer Fry and will still be entitled to the defense of qualified immunity, even if the information turns out to be incorrect. Chief Jolly has clearly established that he was reasonable in relying on the information received from a reasonable officer, Officer Fry.

An officer has probable cause to detain when "the totality of facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect has committed or was committing an offense." *Wadley*, 59 F.3d at 512; *Glenn v. City of Tyler*, 242 F.3d 307, 313 (5th Cir. 2001); *Hart*, 127 F.3d at 444; *United States v. Mendez*, 27 F.3d 126, 129 (5th Cir. 1994); *United States v. Corral-Franco*, 848 F.2d 536 (5th Cir. 1998).

Officer Fry's arrest of Laura Dutton was objectively reasonable because he had adequate probable cause to believe Plaintiff violated Texas Penal Code § 34.02 (Money Laundering). *(APP__ , [Def. Expt. Rodriguez Aff. ¶20, 40, 47, 62, 70]).* While Chief Jolly did <u>not</u> arrest Plaintiff, he also believed Officer Fry had probable cause to arrest Plaintiff for money laundering. *(APP ___, [Def. Jolly Dep. p. 24, lns. 13–15]).* Although probable cause requires more than a bare suspicion of wrongdoing, it requires "substantially less evidence than that sufficient to support a conviction." *United States v. Muniz-Melchor*, 894 F.2d 1430, 1438 (5th Cir. 1990). Texas Penal Code § 34.02 provides that:

(a) A person commits an offense if the person knowingly:
    (1) acquires or maintains an interest in, conceals, possesses, transfers, or transports the proceeds of criminal activity;

    (2) conducts, supervises, or facilitates a transaction involving the proceeds of criminal activity;

(3) invests, expends, or receives, or offers to invest, expend, or receive, the proceeds of criminal activity or funds that the person believes are the proceeds of criminal activity; or

(4) finances or invests or intends to finance or invest funds that the person believes are intended to further the commission of criminal activity.

See TEX. PENAL CODE § 34.02.

The evidence supporting Officer Fry's belief that there was probable cause to arrest Ms. Dutton includes:

1. Officer Fry made a traffic-stop of the vehicle Plaintiff was driving for speeding.  There appears to be no dispute regarding the probable cause that existed to stop Plaintiff for exceeding the speed limit.  *(Pl.'s Orig. Compl. ¶ 13, Doc. No. ____; APP ___, Pl.'s Response to Def.'s Interrog. No. 4; APP ___, [Pltf. Dutton Dep. p. 57, lns. 13–21, p. 58, lns. 14–16, p. 59, lns. 7–11;APP __ [Def. Fry Dep. p. 40, lns. 7–9; p.40, ln. 21–p.41, ln. 7.]).*  Officer Fry registered Plaintiff's vehicle at 61mph in a 50mph zone. *(APP ___,[Def. Fry Dep. p. 40, lns. 5–7]).*

2. Officer Fry smelled the odor of marijuana the first time he approached Plaintiff's vehicle. *(APP ___, [Def. Fry Dep. p. 44, lns. 20–23]).*

3. When he left Ms. Dutton's vehicle after giving her the ticket, Officer Fry instructed Ms. Dutton to "'stay off [her] cell phone and keep [her] windows up.'"  (APP ___, [Pltf. Dutton Dep. p. 81, lns. 4–9]).   After Officer Fry instructed Ms. Dutton to keep her windows up, she "crack[ed] the windows a bit."  (APP ___, [Pltf. Dutton Dep. p. 83, lns. 3–10]).

4. The K-9 officer, Kilo, alerted to a spot on Plaintiff's vehicle by sitting, as Kilo is a passive alert dog.  *(APP ___, [Def. Jolly Dep. p. 48, ln. 24–p. 49, ln. 3]; APP ___, [Def. Fry Dep. p. 64, lns. 22–p. 65, ln. 1]).*

5. During the search of Plaintiff's vehicle, $29,600 in cash was found in a plastic bag. *(APP ___, [Def. Jolly Dep. p. 45, lns. 1–13]; APP __, [Def. Fry Dep. p. 66, ln. 25–p. 67, ln. 7]).*

6. The bag of money was removed from Plaintiff's vehicle and it was laid on the ground, separate from Plaintiff's other belongings. *(APP ___, [Def. Jolly Dep. p. 52, lns. 1–13]).* Chief Jolly walked Kilo around the perimeter of Plaintiff's vehicle for a second time; Kilo did not alert to the vehicle at this time. *(APP ___, [Def. Jolly Dep. p. 52, lns. 1– 13]).* Chief Jolly turned away from Plaintiff's vehicle and gave Kilo the command to search. Kilo walked back and when he got to the bag of money, Kilo alerted. *(APP ___, [Def. Jolly Dep. p. 52, lns. 1–13]).*

7. Officer Fry testified that the amount of cash ($29,600) represents the equivalent of a felony amount of marijuana. *(APP ___, Def. Fry Dep. p. 72, lns. 12–21).*

8. Officer Fry asserts that Ms. Dutton made furtive movements during the time of the stop by looking around, going down in the floorboard area reaching over pretty far. *(APP___, [Def. Fry Dep. p. 51, lns. 8–12, p. 53, lns. 19–25, p. 54, lns. 1–7]).* In Officer Fry's experience it is not normal for a person who's been stopped by an officer to try and watch what the officer is doing to the degree that Ms. Dutton did; he stated that it was the frequency that made it a different degree than the average person watching. *(APP __, [Def. Fry Dep. at p. 54, lns.1–7]).*

9. Chief Jolly contacted Michael Lammerding during his investigation and interview of Plaintiff Dutton, but he did not answer. *(APP ___, [Pltf. Dutton Dep. p. 116, lns. 22–25]; APP ___, [Def. Jolly Dep. p. 63, lns. 18–25]).*

10. Plaintiff Dutton heard Chief Jolly's side of the conversation where Chief Jolly asked Plaintiff's sister about a land sale that resulted in the cash found in Plaintiff's vehicle. Plaintiff admitted her sister confirmed that Plaintiff was involved with a land transaction, but did not know the details. *(APP ___, [Pltf. Dutton Dep. p. 113, ln. 23–p. 114, ln. 5]).* Plaintiff's sister did not know the amount Plaintiff received from her property sale. *(APP ___, [Def. Jolly Dep. p. 58, ln. 23–p. 59, ln. 2, lns. 14–15]).*

11. Officer Fry testified that Plaintiff "displayed jittery nervousness, was overly nervous, and overly anxious for being pulled over for going 11 miles over the speed limit." *(APP __,*

*[Def. Fry Dep. p. 50, lns. 17–22]).*   Chief Jolly also observed Plaintiff to be acting nervous while he was on the scene. *(APP ___, [Def. Jolly Dep. p. 56, lns. 9–14]).*

12. When Officer Fry first asked Ms. Dutton where she was coming from, she said she was visiting a friend and started getting really defensive in hr answers, stating that it wasn't really any of Officer Fry's business, and asking why he needed to know this. *(APP__ , [Def . Fry Dep. p. 48, lns. 13–19]).*

13. Ms. Dutton did not consent to her vehicle being searched, stating "'yes'" when Officer Fry asked, "'do you mind if I search your vehicle?'" *(APP ___, [Pltf. Dutton Dep. p. 80, lns. 7–13]). (APP__(Def. Fry Dep. p. 58, ln. 10-11]).* Almost to the point of being belligerent, Ms. Dutton said she was not going to be subjected to an unlawful search and that Officer Fry would have to get a search warrant. *(APP___, [Def. Fry Dep. p. 46, lns. 7–18]).*

Here, both Texas statutory authority and case law support the arrest of an individual whom an officer has probable cause to believe the person possesses or transports proceeds of criminal activity. *See* TEX. PENAL CODE § 34.02   In Texas, possession of four ounces of marijuana and delivery of one-quarter ounce of marijuana are each state jail felonies. *See* TEX. HEALTH & SAFETY CODE §§ 481.120(b)(3) and 481.121(b)(3).  Thus, a person who possess or transports the proceeds generated from possession or delivery of the equivalent of felony amounts of marijuana commits the offense of money laundering.  Here, Officer Fry considered the totality of the circumstances and based on his training and experience determined there was probable cause to arrest Plaintiff. *(APP ___, [Def. Fry Dep. p. 76, lns. 17–24, p. 73, lns. 5–12]; APP ___, Def. Fry Aff.]; APP__ , [Def. Expt. Rodriguez Aff. ¶20, 40, 47]).*

Although illegal substances were not found in Plaintiff's vehicle, Officer Fry, like any reasonable officer, evaluated the cumulative impact of all factors listed above and at the time of arrest, found probable cause to arrest Plaintiff for money laundering.

Here, the issue is only of a probable cause determination at the time of arrest, but it is helpful to note the Seventh Court of Appeals upheld a *conviction* for money laundering on facts very similar to the facts of this case. *Granado v. State*, No. 07-05-0444-CR, 2006 WL2466972, at *2 (Tex. App.—Amarillo Aug. 25, 2006, no pet.) (mem. op. not designated for publication). Although *Granado* does not provide precedential value to the Court, the case proves instructive with respect to resolving the issue of whether the evidence was legally sufficient to support Officer Fry's determination that probable cause existed to arrest Ms. Dutton for money laundering.

In *Granado*, police stopped the appellant for an expired registration sticker. *Id.* at *1. The officer on the scene testified he requested permission to search the vehicle because the appellant exhibited extreme nervousness, was visibly shaking, and avoided eye contact. *Id.* A police dog was called to the scene and alerted on the driver's side rear passenger compartment of the vehicle. *Id.* Upon searching the appellant's vehicle, officers found $6,100 in cash in small plastic baggies. *Id.* at *2. The appellant claimed the cash was the result of selling a vehicle; however, when asked, appellant could not provide documentation of the sale. *Id.* In addition, the officers testified that (i) possession of $6,100 worth of marijuana would be a felony amount; and (ii) the currency emitted a strong odor of marijuana. *Id.* Further, a K-9 handler/officer testified that the drug dog used alerted to the odor of marijuana on the currency. *Id.* Similar to Plaintiff's search, in *Granado* the search of the appellant's vehicle yielded no drugs. *Id.* at *1. With these facts, the appellate court determined that "[a]lthough, all of the evidence regarding

the currency's origin was circumstantial, that evidence is sufficient to *prove an actor guilty* of the offense alleged." *Id*. at *2 (emphasis added).

The relevant operative facts and the circumstantial evidence set forth in *Granado*, which were legally sufficient to maintain a *conviction* according to both the trial court and the appellate court, are nearly identical to those presented in support of Officer Fry's probable cause determination in the case at hand.  As noted above, probable cause requires "substantially less evidence than that sufficient to support a conviction." *United States v. Muniz-Melchor*, 894 F.2d 1430, 1438 (5th Cir. 1990).  As both the trial court and the appellate court found nearly identical evidence legally sufficient to support a *conviction* of money laundering in *Granado*, evidence of substantially the same nature relied upon by Officer Fry was legally sufficient to meet the substantially lower threshold of establishing probable cause to arrest.

Plaintiff plainly admitted Defendant Jolly did not arrest Plaintiff.  However, for all of the reasons set forth above, Officer Fry, the arresting officer, has clearly met his burden of establishing that he had probable cause to arrest Ms. Dutton for money laundering.  Because Officer Fry had probable cause to arrest Ms. Dutton for money laundering, Ms. Dutton has suffered no violation of her Fourth Amendment rights with respect to an unlawful arrest.

"An officer's entitlement to qualified immunity based on probable cause is difficult for a plaintiff to disturb." *Morris v. Dillard Dep't Stores, Inc.*, 277 F.3d 743, 753–54 (5th Cir. 2001). "A plaintiff must clear a significant hurdle to defeat qualified immunity. '[T]here must not even arguably be probable cause for the search and arrest for immunity to be lost.' That is, if a reasonable officer could have concluded that there was probable cause upon the facts then available to him, qualified immunity will apply." *Brown v. Lyford*, 243 F.3d at 190.

An officer is immune from suit even if it is later determined that probable cause did not exist. *Gibson v. Rich*, 44 F.3d 274, 277 (5th Cir. 1995); *Babb*, 33 F.3d at 477. "[I]f officers of reasonable competence *could* disagree on whether or not there was probable cause to arrest a defendant, immunity should be recognized." *Gibson*, 44 F.3d at 277. "[B]ecause the test for immunity is solely one of objective reasonableness, any 'subjective intent, motive, or even outright animus [is] irrelevant in a determination of qualified immunity based on arguable probable cause to arrest, just as an officer's good intent is irrelevant when he contravenes settled law.'" *Morris*, 277 F.3d at 755 (quoting *Mendenhall v. Riser*, 213 F.3d 226, 231 (5th Cir. 2000)).

Here, Plaintiff fails to allege facts that support a claim under the Fourth Amendment. Plaintiff has not identified a constitutionally protected right upon which Defendant Jolly has infringed, as she openly admits Defendant Jolly did not arrest Plaintiff. *Baker v. McCollan*, 443 U.S. 137, 140 (1979). Chief Jolly's mere presence when Officer Fry arrested Plaintiff does not sufficiently identify a constitutional violation allegedly committed by Chief Jolly. Importantly, the reasonableness of Chief Jolly's actions must be evaluated from the objective perspective of a *reasonable police officer on the scene*—not the subjective beliefs of Plaintiff or her attorney. *See Linbrugger v. Abercia*, 363 F.3d 537, 542–43 (5th Cir. 2004); *Stroik v. Ponseti*, 35 F.3d 155, 158 (5th Cir. 1994).

Because Chief Jolly did not arrest Plaintiff and also because Officer Fry had probable cause to arrest Plaintiff Dutton, Defendant Jolly's qualified immunity cannot be disturbed and he is entitled to summary judgment on her unlawful arrest claim.

## C   Chief Jolly is Entitled to Qualified Immunity from Plaintiff's Unlawful Seizure Claim

There is no evidence Chief Jolly seized the money found in Plaintiff's vehicle during the officers' search. Defendant Officer Fry seized $29,600 incident to Plaintiff's arrest for money laundering; the money was seized as evidence of money laundering. *(APP___, [Def. Fry Aff.].)*

It is well established that seizing property that is evidence of a crime from a defendant's possession "is a normal incident of a custodial arrest." *United States v. Edwards*, 415 U.S. 800, 805 (1974), *overruled on other grounds by United States v. Chadwick*, 433 U.S. 1, 97 (1977). Officer Fry reasonably believed he had probable cause to arrest Plaintiff for money laundering. *(APP ___, [Def. Fry Dep. p. 76, lns. 17–24, p. 73, lns. 5–12]; APP ___, Def. Fry Aff.]; APP__ , [Def. Expt. Rodriguez Aff. ¶20, 40]).*   Money laundering involves the possession, transfer, or transport of the proceeds of criminal activity. *See* TEX. PEN. CODE. § 34.02(a)(1).   "Proceeds" means, among other things, U.S. currency acquired or derived directly or indirectly from, produced through, realized through, or used in the commission of an act.  *See* TEX. PEN. CODE. §§ 34.01(2), 34.01(4), and 34.02(a)(1).

Based on the totality of the circumstances and information available to him at the time, Officer Fry reasonably believed he had probable cause to arrest Ms. Dutton based on her possession of U.S. currency equivalent to a felony amount of marijuana and that it was acquired through a violation of the Texas Controlled Substances Act.  *(APP ___, [Def. Fry Dep. p. 76, lns. 17–24, p. 73, lns. 5–12]; APP ___, Def. Fry Aff.]; APP__ , [Def. Expt. Rodriguez Aff. ¶20, 40]).* The currency seized by Officer Fry served as evidence of money laundering.  There is simply no Fourth Amendment violation when an officer seizes evidence of the crime for which the person is being arrested incident to the arrest at the time of the arrest.  Therefore, Plaintiff has no evidence that the seizure of her $29,600 in any way violated her Fourth Amendment right to be free from unlawful seizures of her property; thus, Defendant Jolly is entitled to summary judgment on this claim.

## II. Chief Jolly is Entitled to Qualified Immunity for Constitutional or Statutory Violations where use of his drug dog was involved

There is no evidence Chief Jolly committed a constitutional or statutory violation when he assisted Officer Fry with a K-9 officer and conducted a free air sniff of Plaintiff's vehicle. Plaintiff has not identified any specific constitutional or statutory requirement, other than her Fourth Amendment claims.

Officer Fry smelled the odor of marijuana emanating from Plaintiff's vehicle; therefore, Officer Fry had probable cause to detain Plaintiff to investigate the origin of illegal substances. It is well established in the Fifth Circuit that "an alert by a drug-detecting dog provides probable cause to search [a vehicle]" and a "showing of the dog's training and reliability is not required if probable cause is developed on site as a result of a dog sniff of a vehicle." *United States v. Rodriguez*, 702 F.3d 206, 210 (5th Cir. 2012) (quoting *United States v. Sanchez-Pena*, 336 F.3d 431, 444 (5th Cir. 2003)). Here, the K-9 officer alerted on Plaintiff's vehicle, which provided probable cause for the Defendant officers to search the vehicle and containers therein. Therefore, Chief Jolly's conduct with the K-9 officer did not result in a constitutional violation.

Since successfully completing training and bringing a K-9 officer to the City of Memphis police department, Chief Jolly and "Kilo" were available to assist surrounding counties' officers. *(APP___, [Def. Jolly Aff.]).* Chief Jolly's actions in using the K-9 officer to assist Officer Fry with the investigation of Plaintiff Dutton were objectively reasonable. *(APP__ , [Def. Expt. Rodriguez Aff. ¶49]).* The K-9 officer's reaction during the free air sniff indicated a positive "hit" for an illegal substance, but drugs were not found in Plaintiff's vehicle.[5] This does not mean Defendant Jolly's use of a K-9 officer resulted in a constitutional or statutory violation. *(APP__ , [Def. Expt. Rodriguez Aff. ¶52]).* There is no evidence that the K-9 officer was not

---

[5] Plaintiff has not clearly alleged that K-9 officer, Kilo, was unqualified or not trained properly to detect illegal substances. However, where a K-9's training records establish "reliability in detecting drugs" and Plaintiff cannot prove otherwise, a positive alert by a K-9 officer provides probable cause to search Plaintiff's vehicle. *Florida v. Harris*, 133 S. Ct. 1050, 1059 (2013).

used in accordance to the constitutional and statutory requirements pursuant to law enforcement training.  *(APP__ , [Def. Expt. Rodriguez Aff. ¶51, 52]).*  For these reasons, Defendant Chris Jolly is entitled to summary judgment.

## V. NEGLIGENT HIRING, TRAINING AND SUPERVISING CLAIMS ARE NOT APPLICABLE TO CHIEF JOLLY UNDER FEDERAL LAW

Plaintiff sued Defendants for unlawful arrest, search, and seizure *(Pl.'s Orig. Compl. ¶ 2)*, unlawful detention, and inadequate supervision and training.  To the extent Plaintiff alleges the Chief Jolly allegedly hired, trained, or supervised Officer Fry, Defendant's motion addresses those allegations here.

Plaintiff's claim of 'negligent hiring,' 'negligent training' or 'negligent supervision' should be subject to summary judgment as to Chief Jolly in his individual capacity because there simply is no evidence that Defendant Jolly hired, trained, or supervised City of Estelline Police Officer Jayson Fry.  In fact, the evidence clearly establishes that Chief Jolly did none of these things. Officer Fry became a City of Estelline Police Officer on or about October 26, 2012, when the City of Estelline City Council approved of him assuming the law enforcement position.  In the few weeks between that time and the incident in question, Jolly did not train or supervise Officer Fry in any way.  *(App ___[Def. Jolly Aff.]).*

### VI. State Law Claims are Barred by § 101.106 of the Texas Tort Claims Act.

To the extent Plaintiff has sued Defendant Jolly for state law claims of false imprisonment/arrest, money had and received (unjust enrichment) and negligence, Plaintiff's state law claims are barred.[6] *(Pl's Orig. Compl. ¶ 3, 22, 34)*.  The Texas Tort Claims Act clearly provides that a plaintiff cannot sue both an entity and an employee of that governmental entity.

---

[6] Although Defendant believes that there is no clearly articulated state law claim for false imprisonment, money had and received, and negligence against Chief Jolly, these are included under the state law official immunity section of the briefing out of an abundance of caution.

TEX. CIV. PRAC. & REM. CODE § 101.106.  If both are sued, then dismissal of the individual upon motion is mandatory.  *Id.*  Plaintiff's state-law claims of false imprisonment and money had and received (unjust enrichment) cannot survive Section 101.106(f) of the Texas Civil Practices and Remedies Code, which provides:

> (f) If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only. On the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed.

Plaintiff's allegations against Chief Jolly are clearly based upon alleged conduct "within the general scope" of his employment as a public employee for the City of Memphis.  Accordingly, the State law tort claims against the individual employee-defendant herein "shall" be dismissed, and Defendant Jolly so moves.  TEX. CIV. PRAC. & REM. CODE § 101.106(f).

Plaintiff's allegations against Defendant Jolly are clearly based upon alleged conduct "within the general scope" of his employment as a public employee for the City of Memphis. Accordingly, the State law tort claims against the individual employee-defendant herein "shall" be dismissed, and Chief Jolly so moves.  *See* TEX. CIV. PRAC. & REM. CODE § 101.106(f).

A defendant is entitled to dismissal under section 101.106(f) upon proof that the plaintiff's suit (1) was based on conduct within the scope of the defendant's employment with a governmental unit and (2) could have been brought against the governmental unit under the Texas Tort Claims Act. *Anderson v. Bessman*, 365 S.W.3d 119, 124 (Tex. App.—Houston [1st Dist.] 2011, no pet.).  This holds true even where a defendant is sued in his *individual* capacity if

he was acting within the scope of his employment. *Franka v. Velasquez*, 332 S.W.3d 367, 381 (Tex. 2011).

### 1. Jolly was within the scope of employment

Whether a defendant's conduct is within the scope of employment turns upon two inquiries: (1) whether the individual was an employee of the governmental unit; and (2) whether the acts alleged fall within the scope of that employment. *Anderson v. Bessman*, 365 S.W.3d at 124. There is no dispute amongst the parties that Chief Jolly was an employee of the City of Memphis on the night of Plaintiff Dutton's arrest. *(APP ___ , (Pls' Orig. Compl. ¶ 8); (APP__ , [Def. Jolly Aff.]; APP__ , [Def. Jolly TCOLE Records]).* The issue, therefore, is whether Chief Jolly's acts fall within the scope of employment for the City of Memphis.

The Texas Tort Claims Act defines "scope of employment" as "the performance for a governmental unit of the duties of an employee's office or employment and includes being in and about the performance of a task lawfully assigned to an employee by competent authority." Tex. Civ. Prac. & Rem. Code § 101.001(5).

The Restatement (Third) of Agency provides:

*An employee acts within the scope of employment when performing work assigned by the employer or engaging in a course of conduct subject to the employer's control. An employee's act is not within the scope of employment when it occurs within an independent course of conduct not intended by the employee to serve any purpose of the employer.*

Restatement (3d) of Agency § 7.07.

"An official acts within the scope of her authority if she is discharging the duties generally assigned to her." *City of Lancaster v. Chambers*, 883 S.W.2d 650, 658 (Tex.1994) (finding that on-duty police officers, pursuing a suspect in squad car, did not act outside the

scope of their authority in driving without regard for safety of others). <u>This is true even if the employee, in discharging her duties, acts in part to serve the employee's or a third party's interest.</u> *Hopkins v. Strickland*, No. 01–12–00315–CV, 2013 WL 1183302, at *3 (Tex.App. Mar. 21, 2013) (citing *Anderson*, 365 S.W.3d at 125–26).

Plaintiff's state-law claims of negligence, false imprisonment, conversion, and money had and received all arise out of Chief Jolly's limited involvement in: (i) the investigation and subsequent search of Plaintiff and her vehicle on suspicion of possession of drugs; and (ii) the arrest and seizure of Plaintiff's money.   TEX. CODE OF CRIM. PROC., Art. 2.13, *Duties and Powers* states that "[i]t is the duty of every peace officer to preserve the peace within his jurisdiction.  To effect this purpose, he shall use all lawful means.  He shall in every case, where he is authorized by the provision of this code, interfere without a warrant to prevent and suppress crime."  As such, Defendant Jolly's conduct was clearly within the scope of his law enforcement duties with respect to assisting Officer Fry during a traffic-stop.   Moreover, even if all of Defendant Jolly's actions were "conducted with improper motives, or in an improper manner, [his] actions still remain within the general scope of law enforcement officers."  *See Tripps v. McCraw*, 945 F.Supp.2d 761, 767 (W.D. Tex., 2013). And as noted above, even if the officer in discharging his duties, acts in part to serve the officer's or a third party's interest, he is still within the scope of employment.

For the reasons set forth above, Chief Jolly has conclusively proven all of his acts fall within the scope of employment.

**2.  Plaintiff's State-Law Tort Claims Could Have Been Brought Against the City of Memphis**

Additionally, for the purposes of § 101.106(f), "any tort claim against the government is brought "under" the Act for purposes of section 101.106, even if the Act does not waive immunity. *Franka*, 332 S.W.3d at 376. Thus, Plaintiff's state-law claims for negligence, false imprisonment, conversion, and money had and received all "could have been brought under" the Texas Tort Claims Act against the City of Memphis, a governmental unit. *See Tripps*, 945 F.Supp.2d at 768.[7]

Because Chief Jolly acted within the scope of his employment, and any state law tort claims could have been brought against the City of Memphis, the Court must dismiss all state-law tort claims against Chief Jolly in this action in his individual capacity.

## CHIEF JOLLY'S OFFICIAL IMMUNITY FOR ALL STATE LAW CLAIMS

Government officials are entitled to official immunity from suit arising from the performance of their (1) discretionary duties in (2) good faith as long as they are (3) acting within the course and scope of their authority. *Wadewitz v. Montgomery*, 951 S.W.2d 464 (Tex. 1998); *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex. 1994). However, "public employees have always been individually liable for their own torts, even when committed in the course of employment, and suit may be brought against a government employee in his individual capacity." *Franka*, 332 S.W.3d at 383. "Generally, however, public employees may assert official immunity from suit arising from the performance of their (1) discretionary duties in (2) good faith as long as they are (3) acting within the scope of their authority." *Id.*

---

[7] The Court in *Tripps* explained the "could have been brought" reasoning from *Franka* as follows:
In *Franka*, the Texas Supreme Court construed the phrase "could have been brought under this chapter against the governmental unit" in section 101.106(f). The issue in *Franka* was whether a government employee must demonstrate the suit could *successfully* be brought against the governmental unit to qualify for statutory immunity under § 101.106(f). The court held that, for the purposes of § 101.106(f), a tort action "could have been brought under" the Texas Tort Claims Act regardless of whether the Act waives immunity for the tort action. *Tripps*, 945 F. Supp.2d at 768.

For reasons set forth above, it is clear that Officer Fry acted within the scope of his authority as a peace officer with respect to the stop, search, arrest, and seizure of evidence incident to the arrest.

With respect to good faith, the issue is whether the officer's actions were objectively reasonable, without regard to the officer's subjective state of mind. *See Chambers*, 883 S.W.2d at 656; *Wadewitz*, 951 S.W.2d at 466. Similar to the qualified immunity analysis, an officer must prove only that a reasonably prudent officer, under similar circumstances, *might* have reached the same decision. *Telthorster v. Tennell*, 92 S.W.3d 457, 465 (Tex. 2002). "That an officer was negligent will not defeat good faith; this test of good faith does not inquire into what a reasonable person *would have done,* but into what a reasonable officer *could have believed."* *Id*. "If the officer meets this burden, plaintiff, to controvert, must do more than show that a reasonably prudent officer could have reached a different decision." *Id.* "Instead, a plaintiff must offer evidence that no reasonable officer in the defendant's position could have believed that the facts were such that they justified his conduct." *Id.* "If officers of reasonable competence could disagree on this issue, the officer acted in good faith as a matter of law." *Id.*

The evidence set forth under the "objectively reasonable" analysis in the qualified immunity portion of the brief applies with equal force to the good faith determination here. As such, the evidence clearly establishes that Chief Jolly acted in good faith because his actions were objectively reasonable under the circumstances.

The only issue not already established by the briefing and evidence above is whether Chief Jolly's actions were discretionary. If an action involves personal deliberation, decision and judgment, it is discretionary; actions that require obedience to orders or the performance of a duty to which the actor has no choice, are ministerial. *See Chambers*, 883 S.W.2d at 654.

"Duties which are discretionary involve acts requiring personal deliberation, decision, and judgment on the part of the officer or employee." *Chapman v. Gonzales*, 824 S.W.2d 685, 687 (Tex. App—Houston [14th Dist.] 1992, writ denied). "A state officer or employee who is required to pass on facts and determine his actions by the facts found is performing duties that are 'quasi-judicial' in nature and are discretionary." *Id.* Finally, a police officer's decision on if, when, and how to arrest a suspect is considered a discretionary act; this includes the officer's investigation culminating into the determination to make an arrest. *See Davis v. Klevenhagen*, 971 S.W.2d 111, 117–18 (Tex. App.—Houston [14th Dist.] 1998, no pet.)

Here, Chief Jolly exercised discretion while he assisted Officer Fry. Although Chief Jolly was merely assisting Officer Fry, his conduct was based upon his discretion as an assisting officer with a K-9 officer. Plaintiff can raise no genuine issue of material fact that would suggest that Chief Jolly's actions, considering his limited involvement, were anything other than discretionary. Accordingly, Defendant Jolly remains entitled to official immunity for Plaintiff Dutton's state-law claims.

**B. Chief Jolly Retains Immunity For All State Law Claims Pursuant to Texas Tort Claims Act §§ 101.057 and 101.021 of the Texas Tort Claims Act.**

Plaintiff's state law claims of false arrest and conversion, to the extent that such claims are alleged, are barred by Section 101.057(2). In other words, the Texas Tort Claims Act does not authorize suits against government employees for intentional torts. TEX. CIV. PRAC. & REM. CODE § 101.057(2). That statute provides that immunity remains intact for claims "arising out of assault . . . or any other intentional tort." *Id.* Thus, Chief Jolly's immunity from intentional torts requires dismissal of these claims.

Additionally, Defendant retains immunity under the Tort Claims Act § 101.021, as there is no allegation or any evidence that Chief Jolly used either motor-driven equipment/vehicles or

tangible personal property negligently as to the Plaintiff. *See* TEX. CIV. PRAC. & REM. CODE § 101.021.

As to any claim for false imprisonment, Texas courts require Plaintiff to establish she was wrongfully detained. *Montgomery Ward & Co. v. Garza*, 660 S.W.2d 619, 621 (Tex. App.—Corpus Christi 1983, no writ). In the case at hand, Chief Jolly did not detain Plaintiff; rather, he responded to Officer Fry's request for assistance. Officer Fry detained Plaintiff after there was reasonable suspicion when he smelled the odor of marijuana from the vehicle. Additionally, Plaintiff was detained further after the K-9 officer, Kilo, alerted on Plaintiff's vehicle for the odor of drugs and $29,600 was found during the search of her vehicle. To maintain an action for false arrest, Plaintiff must show the arrest was made without justification or authority of law. *Davis v. Prosperity Bank*, 383 S.W.3d 795, 800 (Tex. App.—Houston [14th Dist.] 2012, no pet.); *Villegas v. Griffin Indus.*, 975 S.W.2d 745, 754 (Tex. App.—Corpus Christi 1998, pet. denied). Here, Plaintiff's arrest was based on Officer Fry's probable cause determination after considering the totality of the circumstances. Therefore, Plaintiff's claim for false arrest/imprisonment against Chief Jolly is subject to summary judgment.

Further, if the Court were to find some waiver of immunity, Texas courts have been clear that for a claim of money had and received, Defendant must have received money that rightfully belongs to Plaintiff. *Staats v. Miller*, 243 S.W.2d 686, 687–88 (Tex. 1951). Here, there is no evidence Defendant Jolly received money that belonged to Plaintiff. *Id.* at 687. Officer Fry seized $29,600 of Plaintiff's money incident to her arrest for money laundering. On January 10, 2013, Plaintiff returned to the City of Estelline and received $29,600. Other than Plaintiff "thinks" that Officer Fry told her he counted $31,000, there is no evidence any Defendant received money that rightfully belonged to Plaintiff and that it was not returned to her. Thus,

Plaintiff's claim for money had and received against Chief Jolly is subject to summary judgment on that ground as well.

## Damages

### A Plaintiff is not entitled to bond fees –

There is no evidence Plaintiff suffered damages by paying bond fees pursuant to her arrest.  Plaintiff admits she did not pay the bail bond amount on November 29, 2012.  Rather, a friend of Plaintiff's paid the fee.  Plaintiff did not sign an IOU, note, or make any contractual promise to pay for the bond fee.  *(APP ___, [Pltf. Dutton Dep. p. 181, lns. 15–21; p. 182, lns. 6–12]).* Therefore, Defendant Jolly is entitled to summary judgment on this issue.

### B Plaintiff is not entitled to Punitive Damages –

Plaintiff seeks punitive damages against Defendant Jolly.  Punitive damages are allowed in a 42 U.S.C. § 1983 action only when the "defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."  *Smith v. Wade*, 461 U.S. 30, 56 (1983); *Thompkins v. Belt*, 828 F. 2d 298, 301–02 (5th Cir. 1987) (holding punitive damages were not appropriate).  There is no evidence that Chief Jolly's acts were motivated by evil intent or executed with reckless or callous indifference to Plaintiff's rights.  Chief Jolly merely assisted Officer Fry with a K-9 officer during a traffic-stop.  Therefore, the punitive damages claim against Chief Jolly are subject to summary judgment.

### C Plaintiff is not entitled to Declaratory Relief

Plaintiff claims she is seeking declaratory relief in paragraph four of her Complaint. (*Pl.'s Orig. Compl. ¶4*).   Therefore, out an abundance of caution, Defendant will address Plaintiff's entitlement to declaratory relief.

The Federal Declaratory Judgment Act provides that "in a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration . . . ."  28 U.S.C. § 2201(a). Federal Rule of Civil Procedure 57 provides that "[t]he existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate.  The Court may order a speedy hearing of an action for declaratory judgment and may advance it on the calendar."  *See* FED. R. CIV. P. 57.

A declaratory judgment action is by its nature a defensive action.  *See Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 504 (1959).  In *Rowan Companies, Inc. v. Griffin*, the Fifth Circuit explained that "the declaratory judgment vehicle . . . is intended to provide a means of settling an actual controversy before it ripens into a violation of the civil or criminal law, or a breach of a contractual duty." 876 F.2d 26, 28 (5th Cir. 1952) (citing *Scott-Burr Stores Corp. v. Wilcox*, 194 F.2d 989, 990 (5th Cir. 1952)).  "The purpose of the Declaratory Judgment act is not the declaration of non-liability for past conduct, but to settle actual controversies before they ripen into violations of the law or breach of some contractual duty and to prevent the accrual of avoidable damages to those uncertain of rights." *United of Omaha Life Ins. Co. v. Region 19 Edu. Serv. Ctr*, Civ. A. 3:02CV0279D, 2002 WL 1285204 at *3 (N.D. Tex. June 4, 2002) (citing *Chevron U.S.A., Inc. v. Traillour Oil Co.*, 987 F.2d 1138, 1154 (5th Cir. 1993)).   Edwin Borchard, a frequently quoted authority on the subject of declaratory judgments, offered the following guidance on the "appropriateness" of declaratory relief:

> The two principal criteria guiding the policy in favor of rendering declaratory judgments are  (1)  when  the  judgment will  serve  a useful purpose in clarifying and settling the legal relations in issue, and  (2)  when  it  will  terminate  and afford  relief  from  the uncertainty, insecurity, and controversy, giving rise to the proceedings.

BORCHARD, DECLARATORY JUDGMENTS 299 (2d. ed. 1941)

Federal courts enjoy broad discretion to grant or refuse declaratory relief—"[s]ince its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995); *Torch, Inc. v. LeBlanc*, 947 F.2d 193, 194 (5th Cir. 1991). The Declaratory Judgment Act "authorizes" courts, but does not "command" them, to declare rights. *Westport Ins. Corp. v. Atchley*, 267 F.Supp.2d 601, 633 (E.D. Tex. 2003).

This case at hand is not one where Plaintiff is asking the Court to relieve her of a threat of suit by asserting a valid defense or where a future controversy is likely. *Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir. 2003) (noting a Plaintiff without a future controversy lacks standing to seek declaratory relief). Neither is this a case where Plaintiff seeks to avoid or "cut off" damages that might result due to a delayed assertion of a claim. Rather, Plaintiff seeks a "declaration" of liability for the alleged past conduct that forms the basis of Plaintiff's actions. Accordingly, any decision on Plaintiff's requested declaratory relief will not resolve the entire controversy between the parties, but instead will only adjudicate alleged wrongful conduct, which is not an appropriate function of declaratory relief. *See United of Omaha Life Ins. Co.*, 2002 WL 1285204 at *3–4 (rejecting the plaintiff's requested declaration of non-liability (tort or contractual) because it did not satisfy the purpose of the Declaratory Judgment Act and, in any event, served "of limited value in resolving the overall dispute"). Thus, Defendant Jolly is entitled to summary judgment on Plaintiff's request for declaratory relief.

**D Plaintiff is not entitled to Injunctive Relief**

Plaintiff claims she is seeking injunctive relief in paragraph four of her Complaint. (*Pl.'s Orig. Compl. ¶4*). Thus, it is out of an abundance of caution that Defendant Jolly addresses Plaintiff's entitlement to injunctive relief.

Injunctive relief is appropriate when there is potential for Plaintiff to suffer future violations of her rights. *See Armstrong v. Turner Indus., Inc.*, 141 F.3d 554, 563 (5th Cir. 1998). In this case, there is no evidence of a future violation of Plaintiff's rights. Therefore, Plaintiff Dutton lacks standing to seek injunctive relief against Chief Jolly for her claims. *Id.* (determining that a party's failure to allege future injury precludes injunctive relief for lack of standing).

Here, Plaintiff makes absolutely no claim that she faces a high probability of real and immediate harm in the future as is required by law. *Id.* (stating the plaintiff must show that she has "'sustained or is immediately in danger of sustaining some direct injury'" (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 95 (1983))). As such, in order to seek federal injunctive relief, standing requires Plaintiff show that there is reason to believe she would directly benefit from the equitable relief sought. *Plumley v. Landmark Chevrolet*, 122 F.3d 308, 312 (5th Cir. 1997) (citing *Hoepfl v. Varlow*, 906 F. Supp. 317, 320–21 (E.D. Va. 1995) (citation omitted)). This standing requirement is borne out of the United States Supreme Court's statement that "[i]t goes without saying that those who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983).

Thus, "[i]n suits involving injunctive relief, this mandate of a live dispute translates into the requirement that a plaintiff face a threat of present or future harm." *Hoepfl*, 906 F. Supp. at 320. Where a plaintiff seeks injunctive relief based on an alleged past wrong, Plaintiff

must show that a "real or immediate threat" exists that she will be wronged again. *Plumley*, 122 F.3d at 312 (citing *Lyons*, 461 U.S. at 111)[8]; *see Hainze v. Richards*, 207 F.3d 795, 802 (5th Cir. 2000), *cert. denied*, 531 U.S. 959, (2000) and *Hoepfl*, 906 F. Supp. at 320 ("[E]stablished standing rules preclude a plaintiff from obtaining injunctive relief based on only events that occurred in the past, even if the past events amounted to a violation of federal law.").   The Fifth Circuit Court of Appeals "has often held that plaintiffs lack standing to seek prospective relief against judges where the likelihood of future encounters is speculative." *Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir. 2003) (citing *Adams v. McIlhaney*, 764 F.2d 294, 299 (5th Cir. 1985); *Soc'y of Separationists, Inc. v. Herman*, 959 F.2d 1283 (5th Cir. 1982)).

There is no evidence of a real or immediate threat that Plaintiff will suffer an alleged violation of her rights, nor has Plaintiff alleged she is subjected to such a threat. Therefore, Plaintiff is not entitled to injunctive relief.  Based on these grounds, Defendant Jolly is entitled to summary judgment on Plaintiff's request for injunctive relief.

## SUMMARY JUDGMENT STANDARD

The party moving for summary judgment has the initial burden of demonstrating that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  Movant may show that the undisputed material facts affirmatively establish a right to judgment.  Alternatively, movant may establish that the other party has the burden of proof at trial, and has failed to "make a showing sufficient to establish the existence of an element essential to [its] case." *Nebraska v. Wyoming*,

---

[8] "Absent a sufficient likelihood that he will again be wronged in a similar way, Lyons is no more entitled to an injunction than any other citizen of Los Angeles; and a federal court may not entertain a claim by any or all citizens who no more than assert that certain practices of law enforcement officers are unconstitutional." *Id.*

507 U.S. 584, 590 (1993) (quoting *Celotex Corp. v. Catrell*, 477 U.S. 317, 322–23 (1986)).   In order to avoid summary judgment, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986); *Anderson*, 477 U.S. 257. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. 586.   Federal Rule of Civil Procedure 56 requires that the nonmoving party set forth specific facts showing that there is a genuine issue for trial. *Anderson*, 477 U.S. at 256.   Only a genuine dispute over a material fact (a fact which might affect the outcome of the suit under the governing substantive law) will preclude summary judgment. *Id.* at 248.   The dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party on the issue. *Id.*   If the factual context renders a claim implausible nonmovants "must come forward with more persuasive evidence to support their claim than would otherwise be necessary. *Matsushita*, 475 U.S. at 587.

The Court is required to look at the full record, including the pleadings, depositions, answers to interrogatories, admissions, and affidavits. FED. R. CIV. P. 56(c). All reasonable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion, and any doubt must be resolved in its favor. *Id.*   However, only *reasonable* inferences in favor of the nonmoving party can be drawn from the evidence. *Kodak Co. v. Image Tech Servs. Inc.*, 504 U.S. 451, 468 (1992).

## I. CONCLUSION

If a plaintiff fails to state a constitutional claim, then the government official is entitled to qualified immunity. *Hampton v. Oktibbeha Cnty. Sheriff Dep't*, 480 F.3d 358, 363 (5th Cir. 2007).   Here, Chief Jolly demonstrated that he is entitled to the defenses of both qualified and

official immunity.  Defendant Jolly conclusively established he did not arrest Plaintiff.  He also has proved the existence of probable cause for the arrest of Plaintiff by Officer Fry, or at the very least Jolly has established that a reasonable police officer in Officer Fry's position could have believed that probable cause existed for Plaintiff's arrest.  Chief Jolly also conclusively established that he did not subject Plaintiff to an unlawful search.  Additionally, he has conclusively shown he did not unlawfully detain Plaintiff, nor did he unlawfully seize her money.

Defendant Jolly conclusively established his conduct did not amount to any constitutional or statutory violation involving the use of his drug dog/K-9 officer.  Chief Jolly's actions were in accordance with the training and instruction provided by the K-9 officer program and in compliance with constitutional and statutory requirements.  Further, Chief Jolly demonstrated he did not negligently hire, train, or supervise Defendant Officer Fry. Thus, Chief Jolly's qualified immunity remains intact.

With respect to the state law claims, Defendant has established that they are all barred by §§ 101.106, 101.021, and 101.057 of the Texas Tort Claims Act and that his official immunity has not been waived.

Finally, Chief Jolly has conclusively shown Plaintiff is not entitled to bond fees, punitive damages, declaratory relief, or injunctive relief in this matter.

WHEREFORE, Defendant Chris Jolly respectfully asks this honorable Court to grant him summary judgment on all claims asserted against him based upon his entitlement to qualified immunity and official immunity.

Respectfully submitted,

SPROUSE SHRADER SMITH, P.L.L.C.
Lee Ann Reno, Texas SBN 00791509
Leeann.reno@sprouselaw.com
Alex Yarbrough, Texas SBN 24079615
Alex.yarbrough@sprouselaw.com
701 S. Taylor, Suite 500
Post Office Box 15008
Amarillo, Texas  79105-5008
Telephone:  (806) 468-3300
Facsimile:  (806) 373-3454


/s/ Lee Ann Reno
Lee Ann Reno

**ATTORNEYS FOR DEFENDANT CHRIS JOLLY IN HIS
INDIVIDUAL CAPACITY**

## II.CERTIFICATE OF SERVICE

I hereby certify that on May 5, 2014, I electronically filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. The electronic case filing system will send a "Notice of Electronic Filing" to the following attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means:

**ATTORNEY FOR PLAINTIFF:**

Alex Castetter
Stuckey, Garrigan & Castetter Law Offices
P.O. Box 631902
Nacogdoches, TX 75963-1902

George Whittenburg
Whittenburg, Strange & Walker PC
1010 S. Harrison
Amarillo, TX 79101


/s/ Lee Ann Reno
Lee Ann Reno

784847.1
8801.157